MONEY OF THE UNITED STATES IN THE AMOUNT OF $8,500.00, Money of the United States in the Amount of $11,702.64, and a 1978 Chevrolet 2–Door, Appellants,

v.

The STATE of Texas, Appellee.

No. C14–88–00174–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 13, 1989.

Stanley F. Swenson, Houston, for appellants.

Rodney Boyles, Bryan, for appellee.

Before PRESSLER, MURPHY and CANNON, JJ.

## OPINION

CANNON, Justice.

This appeal arises from the forfeiture of cash and a car seized during an undercover drug operation in Bryan. We affirm the judgment of forfeiture.

In October 1985 Arlie Golish met several times with narcotics officers in an attempt to buy at least fifty pounds of marijuana. On each occasion, Golish was driving a 1978 Chevrolet Corvette. On October 12th, Golish, Kurt Olsen, a buyer from Minnesota, and the officers met in a Safeway parking lot to complete the transaction. Before the marijuana and cash could be exchanged, an unwitting Bryan police officer drove up and the operation was cut short. Golish and Olsen were arrested and charged with illegal investment of $20,202 for the purchase of more than fifty pounds of marijuana. The officers seized the Corvette and $8,500 from Golish, $7,500 of which he had shown one officer as earnest money. They also seized $11,000 found in the car in an orange canvas bag allegedly belonging to Olsen, as well as an additional $697 found on Olsen. Golish and Olsen were tried on November 11, 1987, and were convicted of attempted illegal investment.

Section 5.03 of the Controlled Substances Act, TEX.REV.CIV.STAT.ANN. art. 4476–15 (Vernon Supp.1989) allows for the forfeiture of certain items involved in drug trafficking. Those items include any conveyance that "is used or intended for use to transport or in any manner facilitate the transportation, sale, receipt, possession, concealment, or delivery of" controlled substances. Also included is money or other things of value "used or intended for use in violation of Section 4.052 of this Act or derived from the sale, manufacture, distribution, dispensation, delivery, or other commercial undertaking violative of this Act." Section 4.052 is the illegal investment statute that Golish and Olsen were charged

with having violated. An owner of seized property is entitled to notice and a hearing at which the state has the burden of proving by a preponderance of the evidence that the property is subject to forfeiture. TEX.REV.CIV.STAT.ANN. art. 4476–15, §§ 5.05, 5.07 (Vernon Supp.1989).

In this case, the State originally filed three notices of seizure and intention to forfeit, the first concerning the car, the second the cash belonging to Olsen and the third the cash belonging to Golish. The notice as to the car alleged that it was intended for use to facilitate the transportation, sale, receipt, possession, concealment or delivery of property in violation of the Texas Controlled Substances Act. The notices as to both sums of money alleged that the cash money was derived from the sale, manufacture, distribution, dispensation, delivery and other commercial undertaking violative of the Texas Controlled Substances Act. The notices regarding the cash were later amended to add, in the alternative, that the cash money was used or intended for use in violation of § 4.052.

The forfeiture hearing was held on January 21, 1988. The only testimony was that of one of the narcotics officers. At the end of the hearing, the trial judge made the following statements:

The Court having heard the testimony finds that Arlie Michael Golish was the owner of the 1978 Chevrolet two-door, license plate number 824 HJQ, and the vehicle was used or intended for the use to facilitate the transportation, sale, receipt, possession, concealment or delivery of the property, being in violation of the Texas Controlled Substance Act.

The Court finds that $11,697 was owned by or in possession of Kirk Karl Olson [sic] as the owner of said money. The Court finds that said money was derived from the sale, manufacture, distribution, dispensation, delivery or other commercial undertaking, which is violative of the Texas Controlled Substances Act.

The Court finds that Arlie Michael Golish to be the owner of $8,500. Said money was derived from the sale, manufac-

ture, distribution, dispensation, delivery and other commercial undertaking being violative of the Texas Controlled Substance Act.

The Court hereby orders that said property is subject to seizure and forfeiture and orders that said property be forfeited.

On February 3, 1988, the trial judge signed a judgment which differed from her oral pronouncements in that she found that both sums of money, *as well as the car*, were derived from the sale, manufacture, distribution, dispensation, delivery and other commercial undertaking violative of the Controlled Substances Act. In mid-July, after appellants' brief had been filed, the State filed a motion for judgment nunc pro tunc. The trial judge granted the order, which stated that errors in the judgment of record were a clerical oversight and that the corrections contained in the judgment nunc pro tunc reflected the court's intent. In the judgment nunc pro tunc, the court found that the cash money was derived from the sale, manufacture, distribution, dispensation, delivery or other commercial undertaking violative of the Controlled Substances Act *or intended for use in violation of § 4.052*. Regarding the car, the court reinstated her earlier finding that it was intended for use to facilitate the transportation, sale, receipt, possession, concealment or delivery of property in violation of the Controlled Substances Act.

Against this procedural background, appellants Golish and Olsen appeal the forfeiture of their property with nine points of error. They complain of the sufficiency of the evidence to support the judgment, the denial of special exceptions, the denial of discovery through the granting of protective orders and the judgment nunc pro tunc.

Because appellants contest the validity of the judgment nunc pro tunc, we will first review points of error eight and nine. In those two points, appellants argue that the trial court erred in signing the judgment nunc pro tunc because there was no notice given of the State's application to correct the original judgment and because the er-

rors sought to be corrected were judicial rather than clerical.

■ We note that the original judgment was signed on February 3, 1988, and the judgment nunc pro tunc was signed on July 12, 1988. A trial judge has authority to correct mistakes and misrecitals in a judgment after the judgment becomes final so long as the error to be corrected is clerical rather than judicial in nature. *West Texas State Bank v. General Resources Management Corp.,* 723 S.W.2d 304, 306 (Tex.App.—Austin 1987, writ ref'd n.r.e.); TEX.R.CIV.P. 316. However, TEX.R. CIV.P. 316 requires that reasonable notice of any application for correction be given to the opposite party. *West Texas State Bank v. General Resources Management Corp.,* 723 S.W.2d at 307. Appellants in this case assert that they received no such notice, and there is no indication in the record that notice was given. Furthermore, the State remained silent on this issue both in its briefs and in oral argument. The failure to give all interested parties notice of an application to correct a judgment nunc pro tunc after the expiration of the trial court's plenary jurisdiction renders any correction a nullity. *West Texas State Bank v. General Resources Management Corp.,* 723 S.W.2d at 307; see also *Williams v. Pitts,* 151 Tex. 408, 251 S.W.2d 148, 150 (1952); *Conmark Equipment, Inc. v. Harris,* 595 S.W.2d 145, 146 (Tex.Civ.App.—Tyler 1980, no writ). Lack of notice therefore nullifies this judgment, and a discussion as to the type of error sought to be corrected is immaterial. Appellants' point of error eight is sustained. However, as will be evident, nullifying the judgment nunc pro tunc does not affect our ultimate disposition of this case.

In points of error one, two and three, appellants contest the legal and factual sufficiency of the evidence to support the judgment, meaning the original *written* judgment. They contend that the record is devoid of evidence as to the source of either the funds seized or the funds used to acquire the car, particularly as the testifying narcotics officer stated that he had no idea how the funds were acquired.

■ Rendition of judgment is the judicial act by which the court settles and declares the decision of the law upon the matters at issue. A judgment is "rendered when the decision is officially announced either orally in open court or by memorandum filed with the clerk." *Knox v. Long,* 152 Tex. 291, 257 S.W.2d 289, 292 (1953) (quoting A. FREEMAN, JUDGMENTS, § 48 (5th ed.)); *Comet Aluminum Co. v. Dibrell,* 450 S.W.2d 56, 58–59 (Tex.1970); *Atlantic Richfield Co. v. Exxon Corp.,* 663 S.W.2d 858, 863 (Tex.App.—Houston [14th Dist.] 1983), *rev'd on other grounds,* 678 S.W.2d 944 (Tex.1984). In this case, at the close of the forfeiture hearing, the trial judge stated she found the car subject to forfeiture because it was used to facilitate the transportation, sale, receipt, possession, concealment or delivery of property in violation of the Controlled Substances Act. She further found the sums of money subject to forfeiture because they were derived from the sale, manufacture, distribution, dispensation, delivery and other commercial undertaking violative of the Act. We find that the trial judge rendered judgment when she orally announced her decision in open court. Her subsequent written judgment of February 3, 1988, which used the "derived from" language as to both the cash and the car, incorrectly reflected her true intent. The judgment before us on appeal is therefore the one rendered in court.

■ If findings of fact or conclusions of law are neither filed nor requested, the trial court is presumed to have made all the necessary findings to support the judgment. *Lemons v. EMW Mfg. Co.,* 747 S.W.2d 372, 373 (Tex.1988). These implied findings may be challenged by "insufficient evidence" and "no evidence" points the same as jury findings and a trial court's findings of fact. *Burnett v. Motyka,* 610 S.W.2d 735, 736 (Tex.1980). Regarding a "no evidence" point of error, in deciding whether there is evidence of probative force to support a finding, this court must consider only the evidence and inferences

tending to support the finding and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). Regarding an "insufficient evidence" point, the court must consider and weigh all the evidence, including any evidence contrary to the trial court's judgment. *Burnett v. Motyka*, 610 S.W.2d at 736.

█ We first review appellants' legal and factual sufficiency challenges concerning the car. Appellant Golish filed special exceptions and an answer to the notice of seizure and intent to forfeit to which he attached an affidavit stating he was the owner of the car that was the subject of the proceeding. The narcotics officer involved in the undercover operation testified that Golish drove the Chevrolet to all their meetings and that at least three of the meetings, during which they discussed the sale of marijuana, actually took place in the car. One might also infer that the car would have been used to transport the marijuana away from the sale site had the sale been consummated. We find there is sufficient evidence that the car was used to facilitate the sale of the marijuana. *See Wigley v. State*, 705 S.W.2d 264 (Tex.App.—San Antonio 1986, no writ).

Appellants also contend that as the amended notices of seizure and intention to forfeit the cash did not refer to the car, the State therefore abandoned its intent to seek forfeiture of the car. However, the State originally filed three separate notices as to the car and the two sums of money. It seems clear that the amendment of the notices concerning the cash did not affect the notice concerning the car, and thus there was no abandonment of the intent to seek forfeiture of the car.

█ To affirm the trial court's judgment, we must further find some evidence that the sums of money were derived from the sale, manufacture, distribution, dispensation, delivery or other commercial undertaking that violates the Controlled Substances Act. The State must establish a link or nexus between the property to be forfeited and the statutorily defined criminal activity. *$56,700 in U.S. Currency v.*

*State*, 730 S.W.2d 659, 661 (Tex.1987). In this case, there is no direct evidence linking the money to the sale of controlled substances or to any other violation of the Act. The State must therefore present sufficient circumstantial evidence to meet its burden of proof by a preponderance of the evidence. *Henderson v. State*, 669 S.W.2d 385, 387 (Tex.App.—San Antonio 1984, no writ). Under this standard, the State is required to prove that, under all the circumstances raised by the evidence, it is more reasonably probable than not that the recovered money was "derived from the sale...." *Valles v. State*, 646 S.W.2d 636, 638 (Tex.App.—Houston [1st Dist.] 1983, no writ). Although the State is required to offer proof which does more than raise a mere surmise or suspicion regarding the source of the money, it is required only to prove the fact through a balance of probabilities, and it is not required to exclude every other possible way in which the money might have been acquired. *Valles v. State*, 646 S.W.2d at 638; *see also $56,700 in U.S. Currency v. State*, 730 S.W.2d at 663 (Campbell, J., dissenting) (the proponent of such evidence need not disprove all other possible conclusions which could be drawn from the circumstances).

The narcotics officer testified that at one point during the negotiations, he told Golish he needed to see some type of earnest money. Golish met him at a gas station, once again in the Corvette, and the following took place:

Q. And what happened in the Corvette?
A. Once in the Corvette, Mr. Golish reached down in the front of his pants, removed a clear plastic Ziploc baggy and produced what appeared to be 75– to $7800, one-hundred-dollar bills.
Q. When you say "appeared to be," how do you mean? What was the....
A. I didn't count it. It looked like the same envelope that was later seized.
Q. Okay, was it a wad of money or stack of money or how was it?
A. They was neatly pressed. They was in about the size of a sandwich bag full length. It was not wadded up, but it was individual bills, one-hundred-dollar bills.

At the time the actual sale was attempted, the officer asked to count the money. Golish again reached into the front of his pants and pulled out the baggy. The officer counted seventy-five one-hundred-dollar bills. Golish then advised him that Olsen had the rest of the money. The officers later found an additional $11,000 in an orange canvas shaving kit and approximately $697 on Olsen.

 Based on the circumstances surrounding the recovery of the money, the trial court could reasonably have inferred that the money was derived from a commercial undertaking violative of the Controlled Substances Act in that it originated from efforts to gather sufficient funds to purchase a controlled substance. In that sense, the money arose from or was derived from an intended illegal commercial undertaking. We note that appellants offered no explanation as to any other source of this large accumulation of cash. The forfeiture provisions of the Act were designed to facilitate the forfeiture of assets used by drug dealers. *$56,700 in U.S. Currency v. State,* 730 S.W.2d at 661 (citing *One 1980 Pontiac v. State,* 707 S.W.2d 881, 882–83 (Tex.1986)). Unquestionably, appellants were at the scene to deal in drugs and are thus members of the class comprehended by the statute. Therefore, we find the State's evidence to be both legally and factually sufficient to support the trial court findings. Points of error one, two and three are overruled.

 In points of error four and five, Golish and Olsen argue that the trial court erred in denying their special exceptions to the notices of seizure and intention to forfeit. The two objected to the notices on the basis that the allegations were vague and multifarious because they did not specify which of the alleged uses of the vehicle or sources of the cash the State intended to rely on to prove its forfeiture case. The trial court is granted a large measure of discretion in ruling on exceptions to the pleadings, and its ruling will not be disturbed in the absence of a showing of abuse of discretion. *Barnard v. Mecom,* 650 S.W.2d 123, 125 (Tex.App.—Corpus

Christi 1983, writ ref'd n.r.e.); *Blackwell Burner Co. v. Cerda,* 644 S.W.2d 512, 519 (Tex.App.—San Antonio 1982, writ ref'd n.r.e.).

 The language in the notices at issue tracks the language of the provisions regarding vehicles and cash in the forfeiture statute. We find no requirement in the case law that the notices be any more specific. Indeed, the forfeiture notice in the *Henderson* case cited earlier utilized the same wording. *Henderson v. State,* 669 S.W.2d at 386. We are of the opinion that appellants could adequately prepare their defense based on the notices and have therefore shown no abuse of discretion. Points of error four and five are overruled.

In points of error six and seven, appellants claim the trial court erred in denying their discovery rights by erroneously granting protective orders to the State. Following the filing of the forfeiture notices, appellants filed interrogatories and motions for production. The State responded with motions for protective orders asking that discovery be delayed until after the trial of the criminal case. The State argued that appellants should not be permitted to take advantage of the liberal discovery procedures afforded them under civil law to gather evidence that they would not be entitled to under the more restrictive criminal rules. The trial court found that as a criminal action involving the same parties, common issues of law and fact and the same evidence was pending, the discovery motions should be stayed until May 16, 1986.

 The trial court has great latitude to order or deny discovery, and its action cannot be set aside unless there is a clear showing of abuse of discretion. *Tucker v. Gayle,* 709 S.W.2d 247, 249 (Tex. App.—Houston [14th Dist.] 1986, no writ). We find no abuse of discretion in this instance as discovery was not denied but merely postponed. We note that the criminal case was not actually tried until November 11, 1987, and the civil case not heard until January 21, 1988. At no time between the expiration of the protective order on May 16, 1986, and the hearing did

appellants reurge their discovery motions. Thus, they have failed either to preserve error or to show harm, and we overrule points of error six and seven.

We affirm the judgment of forfeiture.