$162,950 IN CURRENCY OF the UNITED STATES of America, Appellant,

v.

STATE of Texas, Appellee.

No. 11–94–192–CV.

Court of Appeals of Texas, Eastland.

Nov. 30, 1995.

Rehearing Overruled Jan. 4, 1996.

Gerald R. Lopez, Odessa, for appellant.

Andy McMullen, District Attorney, Hamilton, Ben L. Stool, Assistant District Attorney, Hamilton, for appellee.

Before ARNOT, C.J., and DICKENSON and WRIGHT, JJ.

## OPINION

ARNOT, Chief Justice.

This is an appeal from a civil forfeiture proceeding under Chapter 59 of the Texas Code of Criminal Procedure.[1] After a bench trial, the trial court ordered that $162,100 be forfeited to the State and that $850 be returned to Alejandro Acosta, the party in interest. We affirm.

■ Forfeiture proceedings of seized property are civil in nature. Article 59.05(b). Where, as in this case, findings of fact and conclusions of law are neither filed nor requested, the appellate court must presume that the trial court made all the necessary findings to support the judgment. *Lassiter v. Bliss*, 559 S.W.2d 353, 358 (Tex.1977); see

*Money of the United States in the Amount of $8,500.00 v. State*, 774 S.W.2d 788, 791 (Tex. App.—Houston [14th Dist.] 1989, no writ). We must affirm the judgment if it can be upheld on any legal theory that finds support in the evidence. *Lassiter v. Bliss, supra.*

■ In a forfeiture proceeding, the State must prove by a preponderance of the evidence that the property seized is contraband and, therefore, that the property is subject to forfeiture. Articles 59.02(a) and 59.05(b); see *$9,050.00 in U.S. Currency v. State*, 874 S.W.2d 158, 161 (Tex.App.—Houston [14th Dist.] 1994, writ den'd). Where, as in this case, there is no direct evidence linking the seized property to illegal activity, the State must present sufficient circumstantial evidence. See *Forty–Seven Thousand Two Hundred Dollars U.S. Currency v. State*, 883 S.W.2d 302, 308 (Tex.App.—El Paso 1994, writ den'd). The State does not have to prove that a specific crime was committed. See *Spurs v. State*, 850 S.W.2d 611, 613 (Tex.App.—Tyler 1993, writ den'd).

■ In its original Notice of Seizure and Intended Forfeiture, the State alleged that the $162,950 was contraband and claimed that the money was used in the commission of money laundering.[2] In the alternative, the State asserted that the money was the proceeds of criminal activity under the Texas Controlled Substances Act, TEX. HEALTH & SAFETY CODE ANN. § 481.001 et seq. (Vernon 1992 & Supp.1995). See Article 59.01(2)(B)(i) & (iv).[3] Property that is contraband is subject to seizure and forfeiture. Article 59.02(a). Money is subject to forfeiture if it is derived from or intended for use in manufacturing, delivering, selling, or pos-

---

1. TEX.CODE CRIM.PRO.ANN. art. 59.01 et seq. (Vernon Supp.1995).

2. TEX.PENAL CODE ANN. § 34.02 (Vernon 1994) defines the offense of money laundering and provides in part:
   (a) A person commits an offense if the person knowingly:
   (1) acquires or maintains an interest in, receives, conceals, possesses, transfers, or transports the proceeds of criminal activity;
   (2) conducts, supervises, or facilitates a transaction involving the proceeds of criminal activity.
   (e) An offense under this section is:
   (3) a felony of the first degree if the value of the funds is $100,000 or more.

3. We note that, at the time of this forfeiture, Article 59.01(2)(B)(iv) had inadvertently been amended by the legislature in such a way that there were two subsections numbered "(iv)." Senate Bill No. 1285 amended Subsection (iv) to provide that contraband was property used in a repeat violation of the Texas Litter Abatement Act. An Act of May 26, 1993, 73rd Leg., ch. 828, § 1, 1993 Tex.Gen.Laws 3284 (Vernon). House Bill No. 354 also amended Subsection (iv) but defined contraband as any property used in the commission of any felony under Chapter 34 of the Texas Penal Code, the money laundering act. An Act of May 26, 1993, 73rd Leg., R.S., ch. 761, § 5, 1993 Tex.Gen.Laws 2966, 2968 (Vernon). Both of these amendments were effective September 1, 1993.

sessing a controlled substance. Articles 59.01(2)(B)(i) and 59.02(a); *State v. $11,-014.00*, 820 S.W.2d 783, 784 (Tex.1991).

■ In three points of error, Acosta argues that the State seized the money during an illegal search and that the State failed to show that the money was contraband. Acosta first argues that a state trooper detained him longer than necessary to issue a warning ticket for illegal window tinting. Next, Acosta argues that the search exceeded his consent. Finally, Acosta contends that there is no evidence that the money seized from his car was connected with any illegal activity. When considering a no evidence point, we may only consider the evidence and inferences tending to support the finding and must disregard all evidence and inferences to the contrary. *State v. $11,014.00, supra; Fifty–Six Thousand Seven Hundred Dollars in U.S. Currency v. State*, 730 S.W.2d 659, 661 (Tex.1987).

Trooper Rickye Feist testified that, on April 28, 1994, he stopped Acosta's vehicle. Acosta was the only occupant of the car. As he approached Acosta's car, Trooper Feist smelled the odor of marihuana and of air freshener coming from the car. When Trooper Feist asked him where he had been and where he was going, Acosta gave conflicting statements. Trooper Feist was writing Acosta a warning ticket when the trooper told Acosta that he "could be on his way." Acosta appeared nervous. Trooper Feist testified that he "became very suspicious at this point that [Acosta] was trying to hide something" from him. Trooper Feist asked Acosta for permission to search the vehicle.

Acosta asked Trooper Feist, "What do you mean by that?" Trooper Feist replied, "Anything that could be illegal." Acosta then consented to the search.

In the backseat of the car under a jacket, the trooper found two packages of money: one package was wrapped in a Kentucky Fried Chicken bag with clear plastic tape and the other was a box that was taped shut. The bag was torn, and the money was visible. The two packages contained a total of $162,100. Trooper Feist seized the $162,100 as well as $850 that Acosta had in his pockets. Neither drugs nor drug paraphernalia were found on Acosta or in his vehicle.

Erath County Deputy Sheriff Tim Marak also testified that he smelled the odor of marihuana coming from Acosta's car. His drug dog "alerted" on the trunk, on both car doors, and on both packages of money.

Acosta later gave a statement to Texas Ranger Thelbert Milsap that he found the money on the side of the road one mile outside of Stephenville. Trooper Feist testified that it had rained that morning and that the packages were completely dry when he seized them at around 4:45 p.m. Ranger Milsap asked Acosta, "Do you believe—do you think we are going to believe this stuff?" Acosta responded, "Naugh, not really." Acosta was allowed to leave after giving his statement.

Texas Department of Public Safety Sergeant Investigator John Cottle, III, testified that, based on the packaging of the $162,100 and Acosta's conflicting stories, he believed that the money would be used to purchase

In 1995, the legislature corrected this situation by amending Subsection (iv) to define contraband as property used in any violation of the money laundering act and by amending Subsection (v) to define property used in repeat violation of the Texas Litter Abatement Act to be contraband. An Act of May 25, 1995, 74th Leg., R.S., ch. 621, § 3, 1995 Tex.Sess.Law Serv. 3485 (Vernon). In doing so, the 1995 legislature did not change Article 59.02(g) which provides that forfeitures of contraband as defined by Article 59.01(2)(B)(iv) applied only to municipalities with populations of 250,000 or more. Article 59.02(g) was added at the same time and in the same bill as the amendment to Article 59.01(2)(B)(iv) which referred to the Texas Litter Abatement Act.

We believe the failure of the 1995 legislature to also amend Article 59.02(g) to refer to the con-

traband definition addressing the Texas Litter Abatement Act in the amended Article 59.01(2)(B)(v) is clearly an oversight. We take judicial notice that the City of Comanche where the contraband was seized has a population of less that 250,000. TEX.R.CIV.EVID. 201. Because of the legislative history of Chapter 59 and because at the time of this forfeiture there were two Subsections "(iv)" to Article 59.01(2)(B), we hold that the limitation in Article 59.02(g) does not apply to this case. Otherwise, money used in money laundering activities can only be forfeited if the activity occurred in a municipality with a population of 250,000 or more.

Acosta has not raised this legislative limitation either at trial or on appeal. There is evidence that would support the forfeiture of the money as contraband used in violation of the Controlled Substances Act.

controlled substances or was the proceeds from the sale of controlled substances. Sergeant Cottle testified that the amount of money seized indicated felony amounts of controlled substances.

Considering only the evidence that supports the trial court's decision, there is evidence to support the trial court's admission of the money and the trial court's finding that the money was substantially connected to a felony under Section 34.02 of the Texas Penal Code or Chapter 481 of the Health and Safety Code. Acosta consented to the search of his car, the search was within the scope of Acosta's consent, and the present case is factually distinguishable from the case of *United States v. Fernandez,* 18 F.3d 874 (10th Cir.1994), cited by Acosta. The testimony of Trooper Feist, Deputy Marak, Ranger Milsap, and Sergeant Cottle support the trial court's finding. *Lassiter v. Bliss, supra.* Acosta's points of error are overruled.

The judgment of the trial court is affirmed.