**$7,058.84 IN U.S. CURRENCY, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 06-99-00067-CV.

Court of Appeals of Texas, Texarkana.

Argued Sept. 14, 2000.

Decided Oct. 4, 2000.

Gary L. White, Barney W. Sawyer, Paris, for appellant.

Martin E. Braddy, Asst. Dist. Atty., Frank Long, Franklin/Hopkins County Dist. Atty., Sulphur Springs, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

DONALD R. ROSS, Justice.

Roderick Rydell Minter appeals from a judgment forfeiting $7,058.84 to the State of Texas. The State alleged that the money is contraband because it was used or intended to be used in the commission of a drug-related felony, and/or was proceeds derived from the commission of such a felony. Trial was before the court, and after rendering judgment on behalf of the State, the court entered findings of fact and conclusions of law.

Police stopped Minter for speeding and for driving without a seat belt. Deputy Roy Strange testified that Minter told him he was on his way from Paris, Texas, to Commerce, Texas, to see his "home boy," whom Minter knew from school, but did not know his name. Strange also testified that he observed "a big cloud of smoke" when Minter rolled down the driver's side window and smelled a strong odor of marihuana coming from Minter's car.

Strange asked Minter to exit his vehicle and asked him if he had anything in his vehicle or on his person that he (Strange) should know about. Strange then conduct-

ed a pat-down search for weapons. The search revealed a .25 caliber handgun. Strange placed Minter under arrest for carrying an unlicensed weapon.

During an inventory search of the car, which belonged to Minter's mother,[1] Strange discovered the money underneath the back seat. The money was wrapped in seven separate bundles and was in a brown plastic bag. Each bundle contained $1,000.00 and was held together by a rubber band.[2] Strange testified that Minter told him the money was an inheritance from his mother, but later told another officer that it was an inheritance from his grandmother. Two canine units alerted on the bag of money.

Strange testified that Minter had a green leafy substance on the front of his shirt and in his mouth between his teeth, which Strange believed indicated marihuana.[3] The inventory search also revealed a package of cigarette rolling papers. Strange testified that after he transported Minter to jail, a small plastic bag containing a green leafy substance, which Strange testified looked like marihuana, fell from Minter's pocket as he stepped into the holding cell.

Minter denied that he was speeding; denied that he was not wearing a seat belt; and denied telling Strange that he was going to see his "home boy." Instead, he maintained that he told Strange he had just taken the car to a mechanic and was on his way to see his girlfriend. He further denied smoking marihuana that day; denied that the green leafy substance found in the holding cell was his; and

denied ever saying the money was an inheritance from his mother. Minter testified that he and his deceased father found $10,700.00 in his grandmother's sewing machine after her death in 1993. He stated that he had kept the money under the linoleum in his mother's closet, but then moved it to his mother's car so that his nephews would not take it. He also acknowledged that he had never reported the money to the federal government and never put it in the bank.

Minter's mother testified that she and Minter lived together in the same house, that she was retired and living on a fixed income, that Minter helped support the household with money from odd jobs, that she asked Minter to take her car to the mechanic that day, that Minter did not use her car very often, that Minter did not have money lying around, and that there was no space under the linoleum in her closet sufficient to hide a large object.

In his first through fourth points of error, Minter challenges the legal and factual sufficiency of the evidence. In his fifth through eighth points of error, Minter complains about the trial court's admitting the testimony of certain witnesses into evidence. These points are somewhat interrelated, and we will review Minter's latter contentions first.

Minter contends that the trial court erred in allowing Strange to testify that the green leafy substance found in the holding cell was marihuana. He contends that the State did not designate Strange as a testifying expert during discovery[4] and

1. The State also initiated forfeiture proceedings against the car, but the trial court found that the car was not subject to forfeiture. The State does not appeal that decision.

2. The bag contained $7,000.00; Minter had $58.84 in cash on his person. The money consisted of the following denominations: eleven $100.00 bills, eighteen $50.00 bills, two hundred forty-six $20.00 bills, nine $10.00 bills, eight $5.00 bills, six $1.00 bills, and $2 .84 in coins.

3. Strange also testified that he believed the presence of the green leafy substance on Minter's shirt and between his teeth indicated that Minter had been smoking marihuana. The trial court sustained Minter's objection to Strange's testimony on this point as speculation.

4. Minter makes a similar complaint about the testimony of Sergeant Scott Sewell. However, Sewell did not testify about the green leafy substance. Sewell testified about the use of his drug detection dog that alerted on the

did not qualify him as an expert witness under Tex.R.Evid. 702.

A careful review of the record on this point reveals no error. Strange testified as follows:

Q What appeared to be inside [the small plastic bag]?

A A green leafy substance I believed to be marihuana.

[Defense Counsel]: Your Honor, we would object to any characterization of anything in a clear plastic bag would be marihuana or appeared to him to be marihuana.

THE COURT: What says the State?

[The State]: Your Honor, I think he's a trained officer. He knows what marihuana looks like. I think he would have ample basis on which to base an opinion as to whether or not it was marihuana.

Minter's attorney then objected on the ground that the State had failed to disclose Strange as a testifying expert. The trial court sustained Minter's objection, but allowed the State to rephrase the question in an effort to build a proper predicate. Strange then testified further:

Q Did you do any tests on that green leafy substance?

A No, sir.

. . . .

Q Describe for us what [the green leafy substance] looked like?

A It's a green leafy substance that has a very distinct odor to it.

Q Did you smell it?

A Oh, yeah, you could smell it.

. . . .

Q Tell us what substance, what green leafy substance that you know of, that it looks like?

A It looks like marihuana.

[Defense Counsel]: Your Honor, once again he's leading the witness.

THE COURT: Overruled.

Q Would you repeat that?

A Marihuana. That's the only other thing that I know that it looks like.

Courts have held that an experienced police officer can offer expert testimony that a green leafy substance is marihuana. *Fierro v. State*, 706 S.W.2d 310, 318 (Tex. Crim.App.1986); *Houlihan v. State*, 551 S.W.2d 719, 724 (Tex.Crim.App.1977); *Jordan v. State*, 486 S.W.2d 784, 785 (Tex. Crim.App.1972); *Boothe v. State*, 474 S.W.2d 219, 221 (Tex.Crim.App.1971), *overruled on other grounds, Leday v. State*, 983 S.W.2d 713, 721 (Tex.Crim.App. 1998); *Satery v. State*, 455 S.W.2d 294, 296 (Tex.Crim.App.1970); *Miller v. State*, 168 Tex.Crim. 570, 330 S.W.2d 466, 468 (1959); *Hernandez v. State*, 137 Tex.Crim. 343, 129 S.W.2d 301, 303 (1938). Therefore, Strange's testimony was admissible under Rule 702, assuming that the State laid a proper predicate for his testimony. In any event, Minter did not object to Strange's testimony under Rule 702; therefore, he has waived that point for our review. *See* Tex.R.App.P. 33.1(a).

■ Further, the trial court sustained Minter's objection that Strange could not offer expert testimony because he was not disclosed as a testifying expert in discovery. However, Strange did not offer expert testimony; rather, his testimony was admissible under Tex.R.Evid. 701, which allows a lay witness to give testimony in the form of opinions or inferences that are rationally based on the witness' perception and helpful to a clear understanding of the witness' testimony or the determination of a fact issue. *See Roberts v. State*, 9 S.W.3d 460, 463 (Tex.App.—Austin 1999, no pet.) (holding that testimony of girls—that a substance was marihuana—was admissible under Rule 701 where the girls had looked at, smelled, and smoked the substance, and where the appellant told them that the substance was marihuana).

money. Minter objected to Sewell's testimony under Tex.R.Evid. 702 and 703, but did not object that the State failed to disclose Sewell as a testifying expert in discovery. Therefore, Minter has waived any complaint he had concerning Sewell's testimony on this basis.

Minter saw and smelled the green leafy substance. Therefore, the State did not violate discovery by failing to disclose Strange as a testifying expert. We overrule Minter's fifth and eighth points of error.

■ In his sixth and seventh points of error, Minter complains of the admission of testimony from Officer Cleve Williams concerning the use of his canine unit in reference to the money. Williams testified that he had gone through a fifteen-day training course with a master trainer to learn to use the dog, that he had been using the dog for two months at the time of Minter's arrest, and that he has found the dog to be useful and reliable in detecting narcotics.

Minter first objected to Williams' testimony on the ground that Williams was testifying as an expert whom the State failed to disclose in discovery. The trial court overruled his objection, but gave him a running objection as to Williams' testimony.

Minter then objected to Williams' testimony under Rules 702 and 703. The trial court offered to let the State lay a proper predicate, which the State attempted to do by asking Williams to explain how police dogs detect narcotics. Minter objected on the ground that Williams was not an expert and could only testify about what was done in the present case. The trial court sustained that objection.

Williams then testified without objection that he took the dog into a room where the brown bag containing the money had been hidden in a filing cabinet. He testified that when they approached the filing cabinet, the dog's breathing became more intense, his body stiffened, and he began scratching furiously at the filing cabinet drawer. Williams also testified that when he opened the filing cabinet drawer, the money was inside. The State then asked Williams if he had seen the dog "give that type of reaction before," but Minter renewed his Rule 702 objection, and the trial court sustained that objection.

From the record, it is apparent that the trial court intended to allow Williams to testify to no more than what happened when he brought the dog into the room where the money was located. The trial court sustained Minter's Rule 702 objections and would not allow Williams to testify about how police dogs are able to detect narcotics. Williams' testimony was not expert testimony, but was merely eyewitness testimony of what the dog did when brought into the room. Therefore, we overrule Minter's sixth and seventh points of error.

■ We now turn to Minter's evidence sufficiency contentions. When confronted with both legal and factual sufficiency points, we must first examine the legal sufficiency point. *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex. 1981); *Seelbach v. Clubb*, 7 S.W.3d 749, 754 (Tex.App.—Texarkana 1999, pet. denied). A trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing evidence supporting a jury's verdict. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994).

■ Accordingly, we review a legal sufficiency or "no evidence" point of error by considering only the evidence and inferences that, when viewed in their most favorable light, tend to support the finding, and by disregarding all evidence and inferences to the contrary. *Havner v. E–Z Mart Stores, Inc.*, 825 S.W.2d 456, 458 (Tex.1992). We uphold the trial court's determination if any probative evidence supports it. *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997). We review a factual sufficiency challenge by examining all of the evidence presented at trial and setting aside the finding only when it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

Property, including currency, is subject to seizure and forfeiture if it is found to be contraband. Tex.Code Crim.Proc.Ann. art. 59.02(a) (Vernon Supp.2000). Contraband is property used or intended to be used in the commission of certain felonies, or proceeds derived from those felonies. Tex. Code Crim.Proc.Ann. art. 59.01(2)(A)-(D) (Vernon Supp.2000). However, conviction of an underlying felony is not required under the forfeiture statute. Tex.Code Crim.Proc.Ann. art. 59.05(d) (Vernon Supp. 2000).

 The State is required to show that probable cause exists for seizing the property. Tex. Const. art. 1, § 9; *Four Thousand One Hundred Eighty–Two Dollars in U.S. Currency v. State,* 944 S.W.2d 24, 27 (Tex.App.—Texarkana 1997, no writ). To do this, the State must prove that there is a substantial connection or nexus between the property and the illegal activity. *Four Thousand One Hundred Eighty–Two Dollars in U.S. Currency,* 944 S.W.2d at 27. This is accomplished when the State proves that it is more reasonably probable than not that the seized currency was either intended for use in, or derived from, a violation of the offenses listed in the forfeiture statute. *Id.*

 The State must prove by a preponderance of the evidence that the seized currency was subject to forfeiture. *Id.* The proof may be made by circumstantial evidence. *Id.* When relying on circumstantial evidence, the State must offer evidence that raises more than a mere surmise or suspicion regarding the source of the money. *Id.* However, the State is not required to exclude every possible means by which Minter might have acquired the money. *Id.* The court may draw any and all reasonable inferences from the circumstances shown by the evidence. *Id.*

 In this case, the State alleged that the money was contraband because it was used or intended to be used in the commission of, or was proceeds derived from, a

drug-related felony under Chapter 481 of the Health and Safety Code. Tex.Code Crim.Proc.Ann. art. 59.01(2)(B), (C). The majority of delivery and possession offenses in Chapter 481 are felonies. *See, e.g.,* Tex.Health & Safety Code Ann. § 481.112–481.118 (Vernon Supp.2000) (manufacture, delivery, or possession of controlled substances in penalty groups one through four). However, delivery or possession of certain quantities of marihuana is a misdemeanor. Tex.Health & Safety Code Ann. §§ 481.120(b)(1), (2), 481.121(b)(1), (2) (Vernon Supp.2000). Therefore, to prove that the money was subject to forfeiture for delivery or possession of marihuana, the State must prove that the money was used or intended to be used in the commission of, or was proceeds derived from, the delivery or possession of a felonious quantity of marihuana.

There is no direct evidence connecting the money to the sale or possession of narcotics; therefore, the State was required to present sufficient circumstantial evidence showing that under all the circumstances raised by the evidence, it is more reasonable than not that the money was used in or derived from the sale or possession of a controlled substance. *See Four Thousand One Hundred Eighty–Two Dollars in U.S. Currency,* 944 S.W.2d at 28. The State points to evidence that Minter was using marihuana when he was stopped, was found in possession of marihuana, had cigarette rolling papers in the car, was armed with a fully loaded concealed handgun, and gave an inconsistent statement about his intended destination. It also observes that the money was hidden under the back seat of the car and was wrapped in $1,000.00 bundles. The State also contends that Minter's mother testified that there was no place under the linoleum in her closet where such a large object could have been hidden.

Courts have reviewed at least five factors in assessing the sufficiency of the evidence in a forfeiture case: (1) the proximity of the money to the drugs and to

evidence of drug trafficking, (2) evidence that the money was previously in contact with drugs, e.g., through a canine alert, (3) suspicious activity consistent with drug trafficking, (4) the amount of money at issue, and (5) the presence of expert testimony indicating that there was probable cause to seize the property subject to forfeiture, e.g., that a substantial connection exists between the property to be forfeited and the criminal activity. *Antrim v. State*, 868 S.W.2d 809, 814 (Tex.App.—Austin 1993, no writ). Applying these factors, and reviewing the evidence in the light most favorable to the trial court's ruling, we hold that the evidence is legally insufficient that the money was used or intended to be used in the commission of a drug-related felony, or that it was the proceeds derived from such a felony.

### Proximity of Money to Drugs or Evidence of Drug Trafficking

■ The fact that the money is found at, or near, a controlled substance does not establish, by itself, the nexus between the money and the sale or distribution of a controlled substance. *$2067 in U .S. Currency, 3 Handguns and 51 Capsules v. State*, 745 S.W.2d 109, 111 (Tex.App.— Fort Worth 1988, no writ). Courts also look to other indications of drug trafficking, such as the possession of drug paraphernalia. *See, e.g., $18,800 in U.S. Currency v. State*, 961 S.W.2d 257, 264–65 (Tex.App.—Houston [1st Dist.] 1997, no writ) (appellant found with money and one kilogram of cocaine, and told police he had just sold one kilogram of cocaine); *Four Thousand One Hundred Eighty–Two Dollars in U.S. Currency*, 944 S.W.2d at 28 (appellant found with cash, methamphetamine, scales, and sandwich bags used to distribute drugs); *$22,922.00 v. State*, 853 S.W.2d 99, 101 (Tex.App.—Houston [14th Dist.] 1993, writ denied) (appellant seen selling marihuana, and trunk of appellant's car contained drug paraphernalia used for distributing/retailing marihuana); *$136,205.00 (Johnson) v. State*, 848 S.W.2d 888, 890 (Tex.App.—Houston [14th Dist.]

1993, no writ) (search of appellant's home revealed three triple-beam scales, plastic wrap, 97 .1 grams of marihuana, a large amount of cash, and several handguns).

■ Even where drug paraphernalia is found, the evidence does not necessarily show that the defendant is engaged in drug trafficking. In *1.70 Acres, .20 Acres, and .28 Acres of Real Property and Structures Thereon (Mizell) v. State*, 935 S.W.2d 480, 490 (Tex.App.—Beaumont 1996, no writ), the evidence showed that the appellant (1) had been found numerous times with small amounts of marihuana, (2) confessed to using drugs, and (3) was arrested with a small amount of marihuana and with drug paraphernalia, such as sandwich bags and a set of scales, which appellant confessed he used to weigh his drug purchases. The court of appeals found that evidence legally insufficient to support the trial court's judgment forfeiting $135.26 to the State. *Id.* The court found that the evidence was equally consistent with the proposition that the appellant was a purchaser and user of drugs. *Id.* The State had alleged that the underlying felony supporting forfeiture was delivery of a controlled substance. *Id.* at 486.

In the present case, there is some evidence that Minter was using and in possession of marihuana when the money was found. In *Rovnak v. State*, 990 S.W.2d 863, 866, 872 (Tex.App.—Texarkana 1999, pet. ref'd), we held that an officer's smelling marihuana in the back seat of a suspect's car provided probable cause to search the vehicle's trunk. Similar testimony is at least some evidence for the presence of marihuana.

Strange testified that he smelled marihuana when he approached the car, that he observed "a big cloud of smoke," and that he found rolling papers in the car. Strange also testified that a green leafy substance fell from Minter's pocket as he entered the holding cell. From seeing and smelling that substance, Strange was able to testify that it looked like marihuana.

As in *1.70 Acres, .20 Acres, and .28 Acres of Real Property and Structures Thereon (Mizell)*, that evidence is, at most, consistent with the proposition that Minter is a drug purchaser and user, rather than a drug trafficker. However, the State never established that Minter was in possession of a felonious quantity of marihuana. It also never established that the money was used in the commission of a marihuana possession felony.

### Evidence that the Money was Previously in Contact with Drugs

A positive alert by a drug detection dog, standing alone, does not constitute evidence that money was used in connection with a drug deal. *$80,631.00 v. State*, 861 S.W.2d 10, 12 (Tex.App.—Houston [14th Dist.] 1993, writ denied). Nevertheless, courts have held that the alert of a drug detection dog constitutes at least some evidence that the money was derived from the sale and/or distribution of drugs. *State v. $11,014.00*, 820 S.W.2d 783, 785 (Tex.1991); *$18,800 in U.S. Currency*, 961 S.W.2d at 264; *$136,205.00 (Johnson)*, 848 S.W.2d at 890.

In *$162,950 in Currency of U.S. v. State*, 911 S.W.2d 528, 530 (Tex.App.—Eastland 1995, writ denied), the appellant was subject to a routine traffic stop. The officer smelled marihuana, and observed that the appellant appeared nervous and gave conflicting statements. *Id.* A subsequent consent search of the appellant's car revealed two packages of money, which the appellant later told police he found on the side of the road. *Id.* A drug dog alerted on the appellant's car and on the two packages of money. *Id.* The court of appeals held the evidence legally sufficient. *Id.* at 531.

The present case is distinguishable from *$162,950 in Currency of U.S.* In the present case, the trial court only allowed Williams to testify that his dog breathed heavily, became tense, and began to scratch the filing cabinet drawer in which police had put the bag of money. Williams was not allowed to testify about the meaning of the dog's actions, its reliability in detecting narcotics, or the nature of his training and experience in handling the dog. From the record, we cannot tell whether the dog reacted to the presence of narcotics on the money or to something else. *See $136,205.00 (Johnson)*, 848 S.W.2d at 891. We also cannot tell whether the dog reacted to the money or to the bag containing the money. *See $22,922.00*, 853 S.W.2d at 102.

In *$11,014.00*, 820 S.W.2d at 785, the Texas Supreme Court held that an alert by a drug detection dog was some evidence that the money was derived from the sale of drugs. The court reversed the court of appeals' holding that this evidence was legally insufficient. In *$11,014.00*, however, there was testimony that, based on the dog's reaction, the money had been in recent close proximity to a controlled substance and that the dog would not alert on the money absent an odor from a controlled substance. *Id.* Similarly, in *$22,-922.00*, 853 S.W.2d at 102, there was testimony that it would take more than a few tainted bills to so contaminate the sack containing the money that the dog would alert from the distance that it did. In the present case, such evidence is completely lacking in the record.

### Suspicious Activity Consistent with Drug Trafficking, the Amount of Money at Issue, and the Presence of Expert Testimony Supporting Probable Cause

Minter contends that we should be guided by the case of *Fifty–Six Thousand Seven Hundred Dollars in U.S. Currency v. State*, 730 S.W.2d 659, 662 (Tex.1987), in which the Texas Supreme Court held that "[w]hen circumstances are consistent with either of two facts and nothing shows that one is more probable than the other, neither fact can be inferred." In that case, police discovered the money in the defendant's home, along with less than an ounce of cocaine, slightly more than an ounce of marihuana, and an array of drug paraphernalia, such as powder form Vitamin B, scales, numerous vials, and two white "dia-

mond folds" of paper with cocaine residue. *Id.* at 661. To explain the presence of the cash, the defendant provided evidence of large amounts of cash deliveries to his home in association with his business. *Id.* at 662. The Texas Supreme Court found the State's evidence legally insufficient. *Id.*

The evidence of an alternative explanation for the presence of the money in the present case is less direct than in *Fifty–Six Thousand Seven Hundred Dollars in U.S. Currency.* Minter testified that the money was an inheritance from his grandmother that he had stored in his mother's car for safety. However, he provided no documentation and his mother could not corroborate his explanation.

Nevertheless, there is also less evidence of drug trafficking in the present case. In *Fifty–Six Thousand Seven Hundred Dollars in U.S. Currency,* the State presented testimony that Vitamin B is used to "cut" cocaine, that scales are used to weigh precise amounts of cocaine, and that vials and "diamond folds" are used to distribute it. *Id.* at 661–62. In the present case, the State offered no other evidence tending to support a theory that the money was associated with drug trafficking.

■ Even if the trial court disbelieved Minter's explanation of the money's source, the State failed to provide a nexus between the money and a drug-related felony. Therefore, the trial court could not infer that even if Minter was lying, the money had to be intended for use in a drug felony or was proceeds derived from such a felony.

The State contends that the amount of money and the way it was packaged provides some evidence of drug trafficking. In contrast with *1.70 Acres, .20 Acres, and .28 Acres of Real Property and Structures Thereon (Mizell),* in which the amount of money forfeited was small ($135.26), Minter was found in possession of a substantial amount of money.

■ However, the amount of money is not dispositive. The courts in *Fifty–Six Thousand Seven Hundred Dollars in U.S. Currency,* 730 S.W.2d at 662, and *$11,014.00 v. State,* 828 S.W.2d 814, 817 (Tex.App.—Houston [1st Dist.] 1992, no writ), found the evidence either legally or factually insufficient when the appellant possessed amounts of money larger than in the present case. As the court in *$22,920* noted, probable cause for a felony does not arise solely from one piece of evidence, but rather from the total pattern of circumstantial evidence. *$22,922,* 853 S.W.2d at 102. The State failed to offer any testimony demonstrating a link between the quantity of money, the way it was packaged, and drug trafficking.

The State's evidence raises nothing more than a surmise or suspicion that the money is connected to a drug-related felony. The State failed to show that the money was used or intended for use in a drug felony, or that it was proceeds derived from such a felony. At most, the evidence demonstrates that Minter possessed marihuana, but it does not establish a link between that possession and the money. There was also no proof that Minter was in possession of a felonious amount of marihuana. We hold that the evidence is legally insufficient to support the trial court's judgment. We need not consider Minter's factual sufficiency challenge.

We reverse the trial court's judgment and render judgment in favor of the appellant.