

NUMBER 13-06-00158-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

$281,420.00 IN U.S. CURRENCY,                                    Appellant,

v.

THE STATE OF TEXAS,                                              Appellee.

---

### On appeal from the 398th District Court
### of Hidalgo County, Texas

---

## DISSENTING MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Vela
Dissenting Memorandum Opinion by Justice Vela**

I respectfully dissent to the majority's decision to award the $281,420 to Gregorio

Huerta.  First, I would hold the trial court correctly granted judgment notwithstanding the

verdict because a directed verdict would have been proper as Huerta totally failed to

establish his right to the property under any theory of law. Second, I would hold the State establish as a matter of law that the $281,420 constituted contraband subject to forfeiture.

### A. Huerta Proved No Theory Of Law Vesting Him With The Right To Keep The Currency

I disagree with the majority's opinion awarding Huerta $281,420, because he neither raised nor proved any legal theory entitling him to retain any portion of the money. The majority seems to conclude that because it believes that the State failed to prove its right under the forfeiture statute, the money, by default, goes to Huerta. I view the issues separately. I believe that the State had the burden of establishing its right to the currency pursuant to the forfeiture statute. I also believe that Huerta had the burden to establish his right to the funds under some theory of law other than by default.

Question No. 2 asked the jury, "Do you find by a preponderance of the evidence that the intervener [Huerta] was in actual or joint possession of the currency *at the time of seizure*?" (emphasis added). The jury responded in the affirmative. In response to Question No. 3,[1] the jury awarded him $70,000.

> The majority holds that Huerta is entitled to $281,420 because
>
> The record reflects that Huerta, the bailee in possession of the Freightliner where the currency was found, was the individual who found the currency. The record further reflects that Huerta gave consent to DPS and U.S. Customs officers to search the Freightliner and its contents on two occasions, thereby supporting the jury's finding that Huerta was in possession of the currency at the time of seizure. Accordingly, we find that more than a scintilla of competent evidence supports the jury's conclusion that Huerta was in possession of the Freightliner and the currency at the time

---

[1] This question asked the jury, "What amount of money should be awarded to the intervener (Write in a figure between $0.00 and $281,420.00)."

2

of seizure. Because the jury found that the currency was not contraband and that Huerta was in possession of the Freightliner and currency at the time of seizure, question three of the jury charge was immaterial.

*$281,420.00 v. State*, 13-06-158-CV, 1008 WL_____, at *_____ (Tex. App.–Corpus Christ Mar.____, 2008, no pet. h.) (mem. op.).

The charge, however, did not include a question about whether Huerta was either in possession of the Freightliner at the time of seizure or whether he was a bailee at the time of seizure. Accordingly, the jury did not make a finding on either issue. Even assuming that Huerta established as a matter of law that he was the bailee in possession of the Freightliner at the time of seizure, that does not entitle him to any portion of the $281,420.

> For the purposes of the forfeiture statute, article 59.01(8) states that seizure
>
> means the restraint of property by a peace officer under Article 59.03(a) [seizure with a search warrant] or (b) [seizure without a search warrant] of this code, whether the officer restrains the property by physical force or by a display of the officer's authority, and includes the collection of property or the act of taking possession of property.

TEX. CODE CRIM. PROC. ANN. art. 59.01(8) (Vernon Supp 2007); *State v. Silver Chevrolet Pickup*, 140 S.W.3d 691, 694 (Tex. 2004) (per curiam).

At the time the $281,420 was seized, Jesus Pulido was the Freightliner's registered owner. By virtue of his ownership interest in the Freightliner, he owned everything inside the Freightliner, including the $281,420. The fact that Huerta found the $281,420 inside the Freightliner did not give him an ownership interest in the money superior to that of Pulido. The evidence does not show that Pulido relinquished his ownership rights either in the Freightliner or the $281,420 prior to seizure. Furthermore, Huerta had been paid for his towing services prior to his discovery of the $281,420. There is no evidence to show

3

that Huerta was an interest holder in either the Freightliner or the $281,420 at the time the money was seized. At the time Pulido relinquished his claim to the $281,420, law-enforcement authorities were in possession of the money, not Huerta.

I also believe that the burden was on Huerta to establish his own right to the currency because he clearly was not the owner of the Freightliner or its contents. No issue was submitted to the jury that would have given Huerta the right to recover money that he clearly did not own. I agree with the majority that question three was immaterial, and I would go further and hold that there was not a single material issue submitted to the jury to allow Huerta to recover. Even if the trial court incorrectly granted a JNOV with regard to the issue of whether the seized money was contraband, there is still no legal basis to allow Huerta to recover. At best, he was a bailee. A bailment is a delivering of a thing under which the bailee acquires an independent and temporary exclusive possession for a specific purpose. *Northcutt v. State*, 131 S.W. 1128, 1130 (Tex. Crim. App. 1910). A mere temporary bailment did not grant him permanent possession to the property seized. The most that Huerta can show is that he was in temporary possession of the Freightliner for purposes of towing. There were no issues submitted to the jury to show either that he was entitled to the property because it was abandoned by the owner or that a contract for reward had been entered into. There is simply no legal basis for Huerta to recover. Texas law provides avenues for determining entitlement to abandoned property. For instance, section 72.101 of the Texas Property Code outlines the presumption of abandonment. TEX. PROP. CODE ANN. § 72.101 (Vernon 2007). Here, the majority presumes that the money must go to the State or to Huerta. I believe that each party was required to prove its own entitlement. If Pulido, as owner of the currency, abandoned his right to the

4

currency, measures should have been taken to process the money as abandoned property. I believe the State proved its entitlement to the currency. But even if it didn't, there was no issue submitted to the jury entitling Huerta to recover the money.

I would hold that Huerta has failed to establish as a matter of law that he is entitled to the $281,420 or any portion of the that amount. I would overrule the third issue.

### B. The State Established As A Matter Of Law That The Currency Was Contraband

I also believe that the State established as a matter of law that the $281,420 was contraband. Chapter 59 of the code of criminal procedure authorizes the forfeiture of contraband, which is defined as:

(2) property of any nature, including real, personal, tangible, or intangible, that is:

* * *

(B) used or intended to be used in the commission of:

(i) any felony under Chapter 481, Health and Safety Code (Texas Controlled Substances Act);

(ii) any felony under Chapter 483, Health and Safety Code; . . . .

* * *

(C) the proceeds gained from the commission of a felony listed in Paragraph (A) or (B) of this subdivision, . . . .

(D) acquired with proceeds gained from the commission of a felony listed in Paragraph (A) or (B) of this subdivision, . . . .

TEX. CODE CRIM. PROC. ANN. arts. 59.01(2)(B)(i), (ii), 2(C), 2(D) (Vernon Supp. 2007). The Texas Supreme Court has stated that "[m]oney is subject to forfeiture if it is derived from or intended for use in manufacturing, delivering, selling, or possessing a controlled

5

substance." *State v. $11,014.00*, 820 S.W.2d 783, 784 (Tex. 1991).

To prevail in a forfeiture proceeding, the State must satisfy a two-part test. First, the State must show probable cause,[2] or "a reasonable belief a 'substantial connection exists between the property to be forfeited and the criminal activity defined by the statute.'" *Hardy v. State,* 102 S.W.3d 123, 129 (Tex. 2003) (quoting *Fifty-Six Thousand Seven Hundred Dollars in U.S. Currency v. State*, 730 S.W.2d 659, 661 (Tex. 1987)). "'It is that link, or nexus, between the property to be forfeited and the statutorily defined criminal activity that establishes probable cause, without which the State lacks authority to seize a person's property.'" *Id.* (quoting *Fifty-Six Thousand Seven Hundred Dollars in U.S. Currency*, 730 S.W.2d at 661).

Second, the State must prove by a preponderance of the evidence that the seized property is contraband and therefore subject to forfeiture. *$18,800 in U.S. Currency v. State,* 961 S.W.2d 257, 260 (Tex. App.–Houston [1st Dist.] 1997, no writ); *$162,950 in Currency of U.S. v. State,* 911 S.W.2d 528, 529 (Tex. App.–Eastland 1995, writ denied); *see State v. $11,014.00,* 820 S.W.2d at 784. Conviction of an underlying felony is not a prerequisite to forfeiture. TEX. CODE CRIM. PROC. ANN. art. 59.05(d) (Vernon 2006).

Because there is no direct evidence showing that the $281,420 was derived from or intended for use in manufacturing, delivering, selling, or possessing a controlled substance, the State was required to present "sufficient circumstantial evidence." *Antrim v. State,* 868 S.W.2d 809, 812 (Tex. App.–Austin 1993, no writ). "When relying on circumstantial evidence, 'the State is required to offer proof which does more than raise

---

[2] EX. CONST. art. 1, § 9.

a mere surmise or suspicion regarding the source of the currency.'" *Id.* (quoting *Money of the United States $8,500.00 v. State*, 774 S.W.2d 788, 792 (Tex. App.–Houston [14th Dist.] 1989, no writ)). However, "the State is not required to exclude every other possible way in which the money might have been acquired; it is required only to prove the fact through a balance of probabilities." *Id.*

In the forfeiture context, there are no concrete rules for courts to apply when evaluating whether evidence is sufficient to support a judgment granting forfeiture. *Id.* at 814. When determining whether currency is contraband, courts have considered the following factors: (1) the manner in which the currency was packaged and wrapped;[3] (2) suspicious activity consistent with drug trafficking;[4] and (3) the amount of money at issue.[5] Here, the evidence showed: (1) Johnny Mercado hired Gregorio Huerta to transport a Freightliner tractor from Alvin to Mercedes; (2) Jesus Pulido was the Freightliner's registered owner; (3) when Trooper Torres stopped Huerta near San Juan, Mercado, who was in a separate vehicle, did not stop; rather, he circled around there two or three times and left; (4) Trooper Torres testified that the Freightliner's middle axle "was missing something, which appeared strange;" (5) x-rays of the Freightliner's engine compartment and two rear axles were dark and inconclusive; (6) both a K-9 search of the Freightliner and a search of the Freightliner's engine compartment and rear axles by various troopers revealed no drugs; (7) Huerta removed the oil plug from the bottom of the Freightliner's

---

[3]*See $24,180.00 v. State*, 865 S.W.2d 181, 184 (Tex. App.–Corpus Christi 1993, writ denied) (evidence that money wrapped in small bundles signifies it was used in drug deal).

[4]*See Antrim v. State*, 868 S.W.2d 809, 814 (Tex. App.–Austin 1993, no writ).

[5]*See id.*

7

axle, stuck his finger in the opening, and, feeling plastic, he opened the Freightliner's hub compartment where he found twenty to thirty little bundles wrapped in duct tape;[6] (8) these bundles consisted of packaged currency totaling $281,420; and (9) even though Huerta notified Mercado about the Freightliner's location and that currency was found in the Freightliner, Huerta denied hearing anything from either Mercado or Pulido regarding either the Freightliner or the currency. Furthermore, in its third amended petition, the State noted that although Mercado and Pulido were served with citation and petition, they did not answer or appear.

In sum, the Freightliner was carrying a large amount of currency wrapped in twenty to thirty bundles hidden in a location that made the currency undetectable to either x-rays or the nose of a drug-sniffing dog. The evidence also showed that even though a large amount of cash was found in Pulido's vehicle, he failed to claim it. The amount of currency at issue is beyond that which ordinary people carry in their vehicles for legitimate business purposes. Moreover, Huerta presented no evidence concerning the origin of the currency. Even though there was no showing of when, where, or from whom the currency was acquired, the State "is not required to exclude every possible way in which the money might have been acquired." *Spurs v. State*, 850 S.W.2d 611, 614 (Tex. App.–Tyler 1993, writ denied); *Antrim*, 868 S.W.2d at 812.

I would hold that the uncontradicted evidence of all of the circumstances taken together shows that the State established as a matter of law the $281,420 is contraband in that it was derived from or intended for use in manufacturing, delivering, selling, or

---

[6]Huerta's search of the Freightliner raises the issue of whether a bailee may search the bailed property without the owner's consent and then claim whatever he or she finds inside the bailed property.

8

possessing a controlled substance and that there is a reasonable belief that a substantial connection or nexus exists between the $281,420 and the criminal activity defined by the Texas Controlled Substances Act, e.g., possession or delivery of cocaine.

I would overrule Huerta's second issue and affirm the trial court's judgment.


ROSE VELA
Justice


Dissenting Memorandum Opinion delivered and
filed this 3rd day of April, 2008.