AFFIRM; Opinion issued November 1, 2012.



In The

# Court of Appeals
## Fifth District of Texas at Dallas

No. 05-11-00901-CV

**$8,300.00 IN U.S. CURRENCY, Appellant**

V.

**THE STATE OF TEXAS, Appellee**

On Appeal from the 382nd Judicial District court
Rockwall County, Texas
Trial Court Cause No. 8-09-8

## MEMORANDUM OPINION

Before Justices O'Neill, FitzGerald, and Lang-Miers
Opinion By Justice O'Neill

In this civil forfeiture appeal, Aladin Martinez challenges the legal and factual sufficiency of the evidence to support the trial court's judgment. We affirm.

### Factual Background

On July 8, 2009, Detective Bobby Burks pulled over a black Mercedes SUV for failing to signal a lane change and following too closely to another vehicle. Martinez was driving the SUV and Jose Guzman was the passenger.

After approaching the vehicle and initiating contact with Martinez, Detective Burks smelled the distinct odor of burnt marijuana. Guzman told Detective Burks they had been in Arkansas

visiting family members for two days. Martinez, however, told Detective Burks a different story during the stop. Martinez told him they went to Arkansas for a party and only stayed a couple of hours. Martinez provided yet another story at trial. He testified he told Detective Burks he wanted to take a birthday road trip. A man by the name of Daniel had loaned him the Mercedes SUV to test drive for several days because he was interested in purchasing a classic car.[1] Martinez claimed he stopped to have the oil changed during the road trip, and a mechanic told him the car had mechanical problems. Based on this information, he decided to drive back home.

As part of his investigation, Detective Burks asked if the car contained any large amounts of currency. Martinez said no, but later admitted during trial that he knew $8,300 in cash was hidden in the car at the time of the stop. He claimed he lied because he was nervous.

Based on the smell of marijuana, Detective Burks thought something illegal was going on and decided to search the vehicle. He noticed the SUV was in disarray, and wooden screws holding the glove compartment together. Based on his training and experience, he did not think it made sense for a Mercedes to be in that condition.

He observed marijuana shakes, stems, and seeds throughout the vehicle, including underneath the cargo area and the carpet. As he continued his search, he noticed the smell of raw marijuana coming from the rear of the vehicle, which made him think marijuana was transported in the vehicle. He did not, however, find any marijuana inside the vehicle during his search.

Detective Burks also testified regarding the condition of the dashboard. During his search, he observed fresh fingerprints underneath the dashboard area of the SUV. The plastic grommets that normally hold the glove compartment were missing and replaced with wooden screws. He described

---

[1] Records showed the car was registered to Daniel Becerra.

it as a good place to hide narcotics and considered it a hidden compartment.

Underneath the compartment and the dashboard, Detective Burks found an envelope, rubber-banded, with money inside. Detective Burks clarified the money was not in the hidden compartment but pushed up in an area underneath the dashboard. Although he could see the envelope, he had to bang the dash for it to fall. He testified that money "stuffed up in a dash is very unusual." The envelope contained fourteen $10 bills, two hundred forty-three $20 bills, twenty-two $50 bills, and twenty-two $100 bills totaling $8,300.00. Martinez claimed to not know anything about it.

Detective Burks also testified to the condition of the sending unit, which is "the top of the gas tank where all your stuff is plugged in." He explained the area was sealed off with silicone, which was "odd" because silicone is not used in vehicles. He testified that in his opinion, "it was used in the past or it was used that day to transport narcotics and/or money."

Detective Burks testified that Martinez admitted to smoking a joint inside the car. However, when Martinez testified and the State asked if he smoked inside the car, Martinez pleaded the Fifth Amendment.

Detective Burks further explained that based on his training, education, and years of experience with the Rockwall County Special Crimes Unit, he believed the $8,300 was illegal proceeds from the sale of narcotics. He substantiated his opinion because (1) Martinez and Guzman gave inconsistent stories, (2) the vehicle was in disarray, (3) he smelled raw and burnt marijuana, and (4) the packaging and location of the money was suspicious. All of these factors led him to believe that, at some point, the vehicle carried a significant amount of marijuana. He also explained the amount of money in the vehicle would be from the sale or purchase of a felony amount of marijuana, not a misdemeanor amount.

The day after Detective Burks recovered the money from the SUV, the money was transported to Officer Josh Ellis's home for a K-9 sniff test. The money was placed in a cabinet in Officer Ellis's garage. He let his K-9 partner loose in the garage, and the dog alerted to the odor of narcotics on the money. The dog specifically alerted by scratching on the cabinet where the money was hidden. Officer Ellis explained his dog was certified to detect marijuana, methamphetamine, cocaine, and heroine but could not indicate the specific type of drug on the money.

After a bench trial, the court granted a final judgment of forfeiture in favor of the State in the amount of $8,300.00. It further entered findings of fact and conclusions of law in which it concluded:

> 6. The alert by the drug dog on the currency, the evidence of marijuana in the vehicle, the amount and location of the money found in the vehicle, the alterations to the vehicle, the nervousness and inconsistencies of stories of both occupants of the vehicle, and the expert testimony of both officers supports the conclusion that more likely than not the $8,300.00 found in the vehicle had recently been in close proximity to a felony amount of marijuana and was substantially connected to the commission of a felony drug offense and is therefore contraband.
>
> 7. The State of Texas met its burden of proving by a preponderance of the evidence, that the $8,300.00 in United States Currency was property used or intended to be used in the commission of a felony, or was the proceeds derived from a felony, specifically used in the commission of a felony, or was the proceeds derived from a felony, specifically the possession of a felony amount of marijuana–a violation of chapter 481 of the Texas Controlled Substance Act–and, thus, subject to forfeiture.

This appeal followed.

## Requirements for Forfeiture

In forfeiture proceedings, the burden is on the State to show probable cause for seizing a

-4-

person's property. *$56,700 in U.S. Currency v. State*, 730 S.W.2d 659, 661 (Tex. 1987). Probable cause in the context of forfeiture statutes is a reasonable belief that a substantial connection exists between the property to be forfeited and the criminal activity defined by the statute. *Id.* It is that link, or nexus, between the property to be forfeited and the statutorily defined criminal activity that establishes probable cause, without which the State lacks authority to seize a person's property. *Id.*

Proof may be made by circumstantial evidence, but the proof must raise more than a mere surmise or suspicion regarding the source of the money. *$43,774.00 in U.S. Currency v. State*, 266 S.W.3d 178, 183 (Tex. App.—Texarkana 2008, pet. denied). However, the State is not required to exclude every possible means by which Martinez might have acquired the money. *$7,058.84 in U.S. Currency v. State*, 30 S.W.3d 580, 586 (Tex. App.—Texarkana 2000, no pet.). The court may draw any and all reasonable inferences from the circumstances shown by the evidence. *Id.*

In the statutory scheme, property, including currency, is subject to seizure and forfeiture if it is found to be contraband. TEX. CODE CRIM. PROC. ANN. art. 59.02(a) (West Supp. 2011). Contraband is property used or intended to be used in the commission of certain felonies or proceeds derived from those felonies. TEX. CODE CRIM. PROC. ANN. art. 59.01(2)(A)-(D) (West Supp. 2011). In this case, contraband is money derived from or intended for use in manufacturing, delivering, selling, or possessing a controlled substance. TEX. CODE CRIM. PROC. ANN. art. 59.02(2)(B)(i) (West Supp. 2011); *see $43,774.00 in U.S. Currency v. State*, 266 S.W.3d at 182. Delivery or possession of marijuana greater than four ounces is a felony for which the forfeiture statute applies. *See* TEX. CODE CRIM. PROC. ANN. art. 59.02(2)(A)(1), (B)(1); TEX. HEALTH & SAFETY CODE ANN. §§ 481.120-.121 (West 2010).

### Standard of Review

Under the civil preponderance of evidence standards, evidence is legally insufficient when

there is a complete absence of evidence of a vital fact, the court is barred from giving weight to the only evidence offered to prove a vital fact, the evidence offered is no more than a scintilla, or the evidence conclusively establishes the opposite of a vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). Ultimately, the question is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *Id.* at 827. In making this determination, we credit favorable evidence if a reasonable fact-finder could and disregard contrary evidence unless a reasonable fact-finder could not. *Id.* So long as the evidence falls within the zone of reasonable disagreement, we may not substitute our judgment for that of the fact-finder. *Id.* at 822.

When considering a factual sufficiency challenge, we must consider and weigh all of the evidence, not just that evidence that supports the verdict. *$43,774.00 in U.S. Currency*, 266 S.W.3d at 183. After considering and weighing all of the evidence, we set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.*

The trial court's findings of fact have the same force and dignity as a jury's verdict on jury questions and are reviewed for legal and factual sufficiency by the same standards that are applied in reviewing the legal and factual sufficiency of the evidence supporting a jury's answer to a jury question. *Id.*

When assessing the sufficiency of the evidence in a forfeiture case, courts have considered the following factors: (1) the proximity of the money to the drugs and to evidence of drug trafficking, (2) evidence that the money was previously in contact with drugs, such as through a canine alert, (3) suspicious activity consistent with drug trafficking, (4) the amount of money at issue, and (5) the presence of expert testimony indicating that there was probable cause to seize the property subject

to forfeiture, in that a substantial connection exists between the property to be forfeited and the criminal activity. *Antrim v. State*, 868 S.W.2d 809, 814 (Tex. App.—Austin 1993, no writ). With these factors in mind, we analyze the evidence as presented in this record.

## Legal Sufficiency of the Evidence

Martinez argues that while the smell of marijuana, inconsistent stories by the passenger and driver, and his admission of smoking marijuana may have given Detective Burks probable cause to search the SUV, such evidence did not rise to the level of a reasonable belief that a substantial connection or nexus existed between the money seized and the commission of a felony for which the forfeiture statute would apply. We disagree.

Although Detective Burks did not find any marijuana inside the SUV, he found shakes, stems, and seeds throughout the car, including underneath the cargo area and the carpet. He also detected the odor of both burnt and raw marijuana inside the vehicle. Martinez admitted to smoking a joint while driving. Moreover, Detective Burks found the money he seized hidden inside the SUV, which was in close proximity to the marijuana shakes, seeds, and stems. He testified that in his opinion the vehicle had been used to transport narcotics.

The record also shows the money was previously in contact with drugs. The Texas Supreme Court has authorized the consideration of a drug detection dog's alert in determining if money found in a search has a substantial connection to criminal activity. *State v. $11,014.00*, 820 S.W.2d 783, 785 (Tex. 1991). While a positive alert by a drug detection dog, standing alone, does not constitute evidence that the money was used in connection with a drug deal, courts have held the alert constitutes at least some evidence it was derived from the sale and/or distribution of drugs. *$7,058.84 in U.S. Currency*, 30 S.W.3d at 588; *$11,014.00*, 820 S.W.2d at 785.

Here, the money was placed inside a cabinet in Officer Ellis's garage. When the dog searched the garage, he scratched on the cabinet, which alerted to the odor of a narcotic. Officer Ellis testified the dog is trained once a week or every other week with "clean money," which is money that has never been in circulation. He said his dog had never had any difficulty differentiating clean money from money that had been in contact with narcotics. Thus, this evidence is more than a scintilla to connect the presence of narcotics and the money seized.

The record also supports suspicious activity consistent with drug trafficking. In *$43,774.00 U.S. Currency v. State*, the court concluded a secret compartment that opened by a remote switch constituted a suspicious condition consistent with drug trafficking. 266 S.W.3d at 186. While there could be other reasons to install a secret compartment, "the very existence of a hidden compartment in a vehicle indicates the user of the vehicle may attempt to hide or secrete items in it." *Id.*

Detective Burks testified that the dashboard area of the SUV had been altered. He saw fresh fingerprints underneath it and observed that wooden screws held it in place rather than the usual plastic grommets. He opined it was a good place to hide narcotics. He found the rubber-banded envelope full of money stuffed up underneath the dash and behind a door area. He had to bang the dash for the money to fall out. He explained money "stuffed up in a dash [was] unusual." There was also evidence that the sending unit part of the gas tank was sealed off with silicone. He testified that in his opinion, "it was used in the past or it was used that day to transport narcotics and/or money." Thus, the alterations made to the SUV constitute suspicious activity consistent with drug trafficking.

While the amount of money is not dispositive, it is a factor to consider. *See $7,058.84 in U.S. Currency*, 30 S.W.3d at 589 (noting probable cause for a felony does not arise solely from one piece of evidence, but rather from the total pattern of circumstantial evidence). While perhaps not

substantial, the recovery of $8,300 is not an insignificant amount of money. Further, Detective Burks testified that for a "'99 vehicle, it's probably . . . worth more than that vehicle," which calls into question Martinez's story that he had the cash on hand to purchase the SUV. Likewise, Detective Burks stated it was significant that he found two hundred forty-three $20 bills in the envelope because "when people are buying narcotics, they generally use $20 bills."

Finally, Officer Burks provided his expert opinion that $8,300 buys more than four ounces of marijuana and it sells for more than four ounces. He testified the money was contraband because of "the inconsistent stories, the disarray in the vehicle, the smell of narcotics, the smell of marijuana, the smell of raw marijuana, and the way it was packaged and hidden."

After weighing the evidence, we conclude some evidence supports the trial court's conclusion the money was "used or intended to be used in the commission of a felony, or was the proceeds derived from a felony, specifically used in the commission of a felony, or was the proceeds derived from a felony, specifically the possession of a felony amount of marijuana." *See, e.g., $43,774.00 in U.S. Currency*, 266 S.W.3d at 187 (concluding the evidence of a compartment that appears to be installed for the purpose of secreting items, together with a positive dog alert on that compartment supports a finding that money was derived from, or intended for use in, distribution or possession of a controlled substance). Thus, considering the evidence in the light most favorable to the trial court's findings and conclusions and indulging in every reasonable inference that supports them, we conclude the evidence is legally sufficient. Martinez's legal sufficiency challenge is overruled.

### Factual Sufficiency of the Evidence

Based on the evidence, we likewise conclude the State's case was not so weak that the trial court's findings and conclusions were clearly wrong or manifestly unjust. Martinez argues it was

as reasonably probable that he hid the money so it would not get stolen. The equal inference rule applies in weak circumstantial evidence cases where the fact-finder would have to guess whether a vital fact exists. *Lewis v. Anderson*, 173 S.W.3d 556, 562 (Tex. App.—Dallas 2005, pet. denied). As detailed above, the circumstantial evidence in this case is not weak.

Although Martinez testified he had the money in his possession because he was looking to buy a classic car, he hid it because he did not want anyone to find it, and he lied because the police made him nervous, this conflicting evidence was considered and rejected by the trial court. We may not reassess his credibility or substitute our judgment for that of the fact-finder, even if the evidence could support a different result. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998). The trial court judged the credibility of the witnesses, determined the weight to be given the testimony, and resolved conflicts and inconsistencies in the testimony. Accordingly, Martinez's factual sufficiency challenge is overruled.

## Conclusion

Having overruled Martinez's challenges to the legal and factual sufficiency of the evidence, we affirm the trial court's judgment.

_____
MICHAEL J. O'NEILL
JUSTICE

110901F.U05

–10–



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

$8,300.00 IN U.S. CURRENCY, Appellant

No. 05-11-00901-CV          V.

THE STATE OF TEXAS, Appellee

Appeal from the 382nd Judicial District
Court of Rockwall County, Texas.
(Tr.Ct.No. 8-09-8).
Opinion delivered by Justice O'Neill,
Justices FitzGerald and Lang-Miers,
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**. It is **ORDERED** that appellee The State of Texas recover its costs of this appeal from Aladin Martinez.

Judgment entered November 1, 2012.

MICHAEL J. O'NEILL
JUSTICE