

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00108-CR

_____

ANTHONY TYRONE WILLS, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 78th District Court
Wichita County, Texas
Trial Court No. 58,663-B

---

Before Sudderth, C.J.; Kerr and Bassel, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I. INTRODUCTION

In two points, Appellant Anthony Tyrone Wills challenges his conviction for the offense of cruelty to non-livestock animals by torture and resulting sentence of two years' confinement in state jail. *See* Tex. Penal Code Ann. § 42.092(b)(1). We affirm.

## II. BACKGROUND

On May 2, 2017, shortly before 8:30 p.m., a Wichita Falls police officer responded to a service call at an apartment complex. Upon arriving, the police officer witnessed 15 to 20 people "physically fighting." When the police officer went to try to break up the fight, he ended up getting "picked up" and "thrown into a wall." The fight was finally subdued when other police officers arrived on the scene. At that point, the police officers were able to question witnesses to determine the cause of the fight. This eventually led the original responding police officer to a dog on a balcony outside one of the apartments. The police officer described the dog as "laying on its side . . . whining and yelping" and "appear[ing] to be in pain." The police officer identified Appellant as the dog's owner.

A supervisor and officer with Wichita Falls Animal Control also arrived at the apartment complex. Upon entering the parking lot of the apartment complex, the supervisor stated that she could already hear the dog "whimpering" and "crying" despite having the vehicle's windows rolled up and the air conditioning on. The

2

animal control officer testified that he could also hear the dog "yelping," "screaming," and what sounded "[l]ike a shrieking, screeching."[1] The supervisor testified that when she came to the dog, she had to move it to open the apartment door, at which time she noticed the dog favoring his rear right leg. She also observed that the dog had "whale eye" and "wrinkled whisker beds."[2]

Appellant signed a consent form allowing animal control to euthanize the dog. The dog was muzzled and transported to the animal control truck. The animal control officer and supervisor both testified that the dog continued to scream, yelp, and whimper the entire time he was in the truck. The animal control officer euthanized the dog later that evening.

The animal control supervisor testified that after the dog was euthanized, she manipulated the dog's rear right leg and noted that it was able to make a "full rotation"—i.e., she could move the leg in a complete circle. When she pressed down on the dog's abdomen, it was hard, which she testified was something she had experienced in dogs with internal injuries. Finally, the supervisor testified that when

---

[1] We do note that the officer testified that his window was rolled down.

[2] One neighbor testified that she saw Appellant throw the dog down and stomp on him, another testified that he saw Appellant strike the dog with his hand multiple times, and another neighbor testified that she saw Appellant stomping the dog. One police officer also testified that when he spoke to Appellant inside of Appellant's apartment, Appellant pointed to a coffee table leg with bite and scratch marks and two scratch marks on the carpet and asked the officer, "You see that? That's $1,000.00. You don't think I wanted to whip his ass?"

she palpated the dog immediately after it was euthanized, blood came out of its mouth and rear.

A Wichita Falls grand jury indicted Appellant for the offense of cruelty to non-livestock animals by torture. *See* Tex. Penal Code Ann. § 42.092(b)(1). In a pretrial supplemental designation of expert witnesses, the State disclosed the animal control officer and supervisor as potential expert witnesses concerning "Animal Control Techniques and Procedures."

On the day of trial, Appellant's counsel requested a rule 702 hearing to test the qualifications of the State's designated experts—specifically the animal control officer and supervisor. The State argued, and the trial court agreed, that the hearing was premature, but the trial court stated that if the witnesses began offering expert testimony and Appellant's counsel made a timely objection and request for a 702 hearing, such a hearing would be conducted at that time. The exchange went as follows:

> [APPELLANT'S COUNSEL]: Judge, since we're on the record and outside the presence of the jury, I will go ahead and continue our discussion that we had off the record about the 702 hearing and the Animal Control officers. I am going to ask for that hearing now. They were designated on December 5th as experts in animal control procedures and techniques, and I would like to have my 702 hearing to inquire about their expert opinions.
>
> THE COURT: [Prosecutor]?
>
> [PROSECUTOR]: Your Honor, I'm not going to say he can't have the hearing. I think we should postpone that hearing until such time as we believe that will become relevant. I would also say for the

4

record that that notice was given to them out of an abundance of caution. It doesn't lock us into some strategy or some process of prosecution of this case.

[APPELLANT'S COUNSEL]: No, Judge, but if they have decided to designate --

THE COURT: We're going to go ahead and proceed. We talked this morning about whether -- I offered time to go ahead and have that 702 hearing. We left it that in the event it became necessary, you would be diligent and alert and object at an appropriate time, at which time we will then have the 702 hearing.

[APPELLANT'S COUNSEL]: Thank you, Judge. I'd like to make a record.

THE COURT: You just did, but you can make more.

[APPELLANT'S COUNSEL]: Thank you. With respect to the locking in procedure, I'm not saying they're locked into any particular way of prosecuting this case. What I'm saying, in designating these people as experts, I am entitled to inquire about their expert opinions and I will be asking to do that outside the presence of the jury before they testify.

THE COURT: That will be fine. The Court had given you ample opportunity to do that earlier. We'll still give you that right when the time occurs. Let's get the jury.

[APPELLANT'S COUNSEL]: Thank you, Your Honor.

When the State began to question the animal control officer about the Wichita Falls Animal Control euthanasia protocols, Appellant's counsel approached the bench and requested to "702 this witness outside the presence of the jury." The prosecutor contended that he was merely asking for a factual observation and not an expert opinion, and the trial judge overruled the objection:

5

Q. . . . [P]lease describe for the jury the protocol that the Animal Control department here in Wichita Falls utilizes once a dog has been euthanized. What happens to the dog?

[APPELLANT'S COUNSEL]: Judge, at this time -- May I approach?

THE COURT: You may.

(Following held outside presence of jury)

[APPELLANT'S COUNSEL]: We're now getting into testimony about Animal Control procedures and that sort of thing. I would like to 702 this witness outside the presence of the jury to figure out what he's going to say on those expert matters that they've been designated on.

[PROSECUTOR]: It's a factual question to what is the protocol. I'm not asking for an opinion.

THE COURT: Yeah. I know you're concerned about this issue and need to keep it in mind, but with respect to what his protocols are, I'm going to overrule the objection.

[APPELLANT'S COUNSEL]: Thank you, Judge.

The prosecutor elicited testimony from the animal control officer regarding euthanasia protocols, specifically with respect to storage and disposal of the animal's body after it has been euthanized.

The State also called the animal control supervisor for Wichita Falls. When the prosecutor began asking her about the condition of the dog's rear right leg—specifically, whether she believed based on her initial assessment that the leg was lame—Appellant's counsel asked to question the animal control supervisor on voir dire, which the trial court permitted.

6

When the prosecutor asked the animal control supervisor whether she had ever testified as an expert witness, Appellant's counsel objected, and the trial court sustained the objection as to the supervisor testifying about causation but not as to testifying about her experience:

[PROSECUTOR:]  Okay.  And -- Have you ever testified as an expert in any court?

A.  Um, not in a -- not in this capacity as far as this court --

[PROSECUTOR:]  Okay.

A.  -- district court.

[APPELLANT'S COUNSEL]:  Judge, at this time I'm going to object to the witness testifying as to any sort of -- what -- any of the opinions as to what injuries were present or any sort of causation or the extent, because, as the witness's testimony has just revealed, there's no medical basis for any of that testimony.  That's expert testimony that's trying to get back doored in through a lay witness.

[PROSECUTOR]:  Absolutely not, Your Honor.  I have not at all suggested the cause of why that leg on that dog is at an odd angle.  That's a decision the jury is going to make later.  I have not asked her to elicit such an opinion.  I'm only asking her facts about what she saw, and she can absolutely provide that information under 701.

THE COURT:  I will sustain the objection with respect to her ability to opine on causation.  Based on her experience, I will let her give her opinion with regard to the condition of the dog's leg as shown in this photo.

The court granted Appellant's counsel a running objection.

The supervisor testified only that the dog's leg appeared "lame or damaged" in photos that had been introduced into evidence.  Later, the supervisor began testifying

7

about her experiences with dog behavior, and Appellant's counsel objected under rule 702. The trial court overruled the objection:

> [PROSECUTOR:] Did he ever -- Was he ever able to bite you or anybody else there on the porch?
>
> A. No. He -- He did not break the skin of anyone on -- on scene. And per my experience with dog behavior, the dog was, uh --
>
> [APPELLANT'S COUNSEL]: I'm going to renew my objection as to -- Well, I'm going to object to the witness opining as to what dog behavior is, Judge.
>
> THE COURT: That's your 702 --
>
> [APPELLANT'S COUNSEL]: Yes, Judge.
>
> THE COURT: The Court's going to overrule that. The factors for someone needing to testify about these matters can include experience without any formal education, and the Court's ruling is based on the fact that [the supervisor] does have experience in these matters. So I'll overrule the objection.
>
> . . . .
>
> THE WITNESS: Uh, based on my experience, the dog was exhibiting whale eye and also wrinkled, uh, whisker beds, which is just a sign of fear aggression, so not normally would a dog display that behavior.

The supervisor was asked about the meaning of the word "palpate" and Appellant's counsel objected again under rule 702:

> [PROSECUTOR:] What does it mean to palpate?
>
> A. Well, there's different instances to use it. Um, to, uh --

[APPELLANT'S COUNSEL]: I'm going to object to this testimony under 702, Judge. It's expert testimony about medical veterinarian stuff.

THE COURT: The Court's ruling is the same based on her level of experience.

The supervisor then testified that she observed blood "froth" from the dog's mouth after he had been euthanized and that in her experience with other dogs with confirmed internal injuries, it was normal for blood to come out of their nose or mouth. Appellant's counsel objected, and the trial court overruled the objection:

[PROSECUTOR:] After you palpated [the dog], did he have blood come out of his mouth and/or nose?

[ANIMAL CONTROL SUPERVISOR:] Yes. This is directly after euthanization was administered.

[PROSECUTOR:] And have -- Based on your training or your experience with other dogs that have been injured and euthanized, is the blood appearing in this fashion typical when dogs have suffered internal injuries?

[APPELLANT'S COUNSEL]: I'm going to renew my prior objection as to causation, Judge.

THE COURT: I don't believe that question went to causation. Overruled.

[APPELLANT'S COUNSEL]: I'm also just renewing my 702 objection, Judge.

THE COURT: You've already been given a running objection.

[ANIMAL CONTROL SUPERVISOR]: Can you repeat the question? I'm sorry.

[PROSECUTOR:] Sure. Based on your experience with other dogs with confirmed internal injuries, once those dogs were euthanized, was it a normal occurrence to see blood come out of their nose and/or mouth?

[ANIMAL CONTROL SUPERVISOR:] Yes, sir.

[PROSECUTOR:] And did you see the blood froth out of [the dog's] nose and/or mouth?

[ANIMAL CONTROL SUPERVISOR:] Out of the mouth and the, uh -- the, uh, rear.

[PROSECUTOR:] Oh, okay. Now, let's be clear about this. Prior to euthanizing the dog or having him euthanized, he did not have the blood coming out of his rear or his mouth, correct?

[ANIMAL CONTROL SUPERVISOR:] I believe there was a little blood on the rear, um, but only increased after euthanization.

The jury returned a guilty verdict. The trial court assessed punishment at two years' confinement in state jail and rendered judgment, sentencing Appellant accordingly. This appeal followed.

Appellant raises two points contending that (1) the trial court erred denying his motion to suppress, and (2) the trial court erred in permitting lay witnesses to offer expert opinion.

## III. DID THE TRIAL COURT ALLOW LAY WITNESSES TO OFFER EXPERT TESTIMONY?

We conclude that the opinions challenged by Appellant were, at the most, lay opinions admissible under Texas Rule of Evidence 701. *See* Tex. R. Evid. 701. This basis for our disposition of this appeal obviates any claim of error predicated on the

claim that the trial court denied Appellant a gatekeeper hearing to determine the admissibility of expert opinions or erred in overruling his objections under Texas Rule of Evidence 702 that deals with the admissibility of expert opinions. *See* Tex. R. Evid. 702. Accordingly, our resolution of this appeal does not require that we reach Appellant's first point. *See* Tex. R. App. P. 47.1.

## A. Standard of Review

We review a trial court's decision to admit or exclude scientific expert testimony under an abuse of discretion standard. *See Sexton v. State*, 93 S.W.3d 96, 99 (Tex. Crim. App. 2002). The trial court ruling will be upheld if it is within the zone of reasonable disagreement. *Id.* By rule, an expert witness may offer an opinion if he possesses specialized knowledge, skill, experience, training, or education related to a fact in issue. Tex. R. Evid. 702. A lay witness may offer opinions based on his perception when it is helpful to a clear understanding of the witness's testimony or the determination of a fact in issue. Tex. R. Evid. 701. We review a trial court's decision to allow opinion testimony from a lay witness for an abuse of discretion. *See Fairow v. State*, 943 S.W.2d 895, 901 (Tex. Crim. App. 1997).

## B. No expert testimony was provided.

Both the animal control officer and supervisor provided no more than lay opinion testimony based on their firsthand observations of the dog at the apartment complex and when it was euthanized. *See* Tex. R. Evid. 701.

The animal control supervisor's testimony that the animal exhibited fear that manifested itself in "whale eye" or "wrinkled whisker beds" was based on her firsthand observations and not some scientific theory requiring significant expertise. Thus, we conclude that this was not expert testimony and that the trial court did not abuse its discretion in admitting the testimony as lay opinion. *Cf. $7,058.84 in U.S. Currency v. State*, 30 S.W.3d 580, 585 (Tex. App.—Texarkana 2000, no pet.) (concluding that testimony from a police officer with the canine unit about the drug dog's physical reactions—intense breathing, stiffening body, and scratching at a drawer—"was not expert testimony, but was merely eyewitness testimony of what the dog did when brought into the room").

Relying on *Davis v. State*, we likewise conclude that the animal control supervisor's testimony about the dog's rear leg was not expert testimony. 313 S.W.3d 317, 324 (Tex. Crim. App. 2010). *Davis* was a capital murder case in which the appellant had stabbed the victim. *Id.* A detective at the crime scene discovered the victim's dead cat wrapped in a jacket inside a pillowcase and hidden in the victim's bedroom closet. *Id.* at 347. The cat had three wounds in its back. *Id.* In the detective's opinion, the wounds on the cat were consistent with stab wounds and were the size and shape of the knife blade used on the victim, and the trial court allowed the detective to testify "regarding the comparison of the victim's injuries to those of her cat," despite the fact that the detective had no scientific training in this area of

12

veterinary medicine and despite the fact that the detective was never offered as an expert witness for any purpose. *Id.* at 349.

The appellant argued that the trial court abused its discretion by permitting the detective to testify as an expert comparing the victim's and cat's injuries because he was neither trained nor presented by the State as an expert. *Id.* The court of criminal appeals rejected this argument because the detective's testimony was not expert opinion requiring scientific training but permissible and helpful lay testimony based on his personal observations of the cat's body at the scene of the crime:

> [The detective] did not purport to possess any specialized knowledge or to be an expert in wound determination. He testified based upon his first-hand observation of the wounds themselves. His observations did not require significant expertise to interpret and were not based on scientific theory. Although the jurors could view photos of the wounds, they were not in a position to observe the cat's body first-hand. [The detective] had a superior vantage point in viewing those wounds, having observed the body of the cat, while the jurors could view only two-dimensional photos. [The detective's] inferences helped to provide a clearer understanding of what took place contemporaneously to the offense, and thus, the trial court did not abuse its discretion in concluding that the evidence was admissible as a lay opinion.

*Id.*

The animal control supervisor's testimony—that based on her initial observation the dog's rear leg appeared lame or broken as well as her observation that after the dog had been euthanized, she was able to "fully rotate" its rear leg—helped clarify the condition of the dog's leg because, like in *Davis*, the jurors only had two-dimensional photographs to observe. *See id.* Thus, the animal control supervisor's

13

testimony about the dog's leg was not expert testimony and the trial court did not abuse its discretion in concluding that the testimony was admissible as a lay opinion. *See id.*

The animal control supervisor's testimony about the hardness of the dog's abdomen and blood coming out of its mouth and rear was also not expert testimony. It is a rational inference, not requiring scientific expertise or specialized knowledge, that when blood is coming out of an animal's mouth or rear, something is injured inside. *See Gary v. State*, No. 03-16-00571-CR, 2017 WL 3897313, at *3 (Tex. App.—Austin Aug. 31, 2017, no pet.) (mem. op., not designated for publication) ("A [lay] witness may offer such an opinion even when he has experience or training. Even events not normally encountered by most people in everyday life do not necessarily require expert testimony. The personal experience and knowledge of a lay witness may establish that he or she is capable, without qualification as an expert, of expressing an opinion on a subject outside the realm of common knowledge." (citing *Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002))); *Tobar v. State*, Nos. 14-15-00011-CR, 14-15-00012-CR, 2016 WL 2975568, at *6–7 (Tex. App.—Houston [14th Dist.] May 19, 2016, no pet.) (mem. op., not designated for publication) (relying on *Davis* and concluding police officer's testimony that "[b]usted lips typically occur after an impact, not during a wrestling match" was admissible as lay opinion testimony under rule 701 because the officer's testimony was rationally based on his firsthand perceptions of the victim's injuries).

Under rule 701, both witnesses were expressly permitted to provide opinion testimony as lay witnesses as long as their testimony was rationally based on their perceptions and observations. *See* Tex. R. Evid. 701; *Tobar*, 2016 WL 2975568, at *6–7; *In re J.A.M.*, No. 03-02-00610-CV, 2003 WL 22303115, at *4 (Tex. App.—Austin Oct. 9, 2003, no pet.) (mem. op.) (holding testimony from a witness "present in the cafeteria as the boys were telling their story [about drowning a cat] . . . was based on her own senses of sight and sound" and was thus admissible under rule 701); *$7,058.84*, 30 S.W.3d at 585.

The animal control officer's testimony was limited to a description of how the dog was euthanized, and then how its body was stored and disposed of. This is simply a recitation of the facts and is not opinion testimony, either lay or expert.

A review of their testimony quoted above makes clear that both the animal control officer and supervisor were testifying about their direct observations based on their immediate experiences with the dog on the date of the incident, through the euthanasia process, and concluding with disposing of the dog's body. And, their testimony was rationally based on these firsthand observations.

Thus, the trial court did not abuse its discretion in overruling Appellant's objections. *See* Tex. R. Evid. 701; *J.A.M.*, 2003 WL 22303115, at *4.

## C. Even if expert testimony was erroneously admitted, it did not affect Appellant's substantial rights.

However, even if the trial court abused its discretion by permitting the animal control officer and supervisor to provide expert testimony, a trial court's error in admitting evidence should be disregarded unless the error affected Appellant's substantial rights. *See* Tex. R. App. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in the determination of the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). An accused's substantial rights are not affected by the erroneous admission of evidence if the court, after examining the whole record, has fair assurance that the error did not influence the jury or had but a slight effect. *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001).

A person commits the offense of cruelty to a non-livestock animal by torture, "if the person intentionally, knowingly, or recklessly . . . tortures an animal or in a cruel manner . . . causes serious bodily injury to an animal." Tex. Penal Code Ann. § 42.092(b)(1). Section 42.092(a) states that torture "includes any act that causes unjustifiable pain or suffering." *Id.* § 42.092(a)(8). There is no requirement that the State establish that the defendant caused the animal to die or have internal injuries.

The evidence was both undisputed and overwhelming that Appellant's actions caused the dog unjustifiable pain. At trial, three different neighbors testified that they saw Appellant stomping, kicking, and hitting the dog. There was also testimony from

numerous witnesses that they heard the dog yelping, crying, and whimpering. Finally, a police officer testified that Appellant showed him damage to his furniture and carpet and then asked the police officer, "You see that? That's $1,000.00. You don't think I wanted to whip his ass?" After reviewing the whole record, we are assured that any error in the admission of expert testimony from the animal control officer and supervisor did not affect Appellant's substantial rights, and thus, is not reversible.

Accordingly, we overrule Appellant's second point.

## IV. CONCLUSION

Having overruled Appellant's second point, which is dispositive, we affirm the trial court's judgment without reaching his first point. *See* Tex. R. App. P. 43.2(a), 47.1.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: March 28, 2019